IN THE SUPREME COURT OF NORTH CAROLINA

No. 376A21

Filed 6 April 2023

MICHAEL G. WOODCOCK, M.D., CAROL WADON, CAMILLE WAHBEH, and
GEORGE DEMETRI

v.

CUMBERLAND COUNTY HOSPITAL SYSTEM, INC. and CAPE FEAR VALLEY
AMBULATORY SURGERY CENTER, LLC

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order on defendants' motion

for award of attorneys' fees as part of costs under Rule 41(d) of the North Carolina

Rules of Civil Procedure entered on 23 March 2021 and an order on defendants'

application for attorneys' fees and costs entered on 17 June 2021 both by Judge

Gregory P. McGuire, Special Superior Court Judge for Complex Business Cases, in

Superior Court, Guilford County, after the case was designated a mandatory complex

business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(a). Heard in the

Supreme Court on 1 February 2023.

> *Douglas S. Harris for plaintiff-appellants.*
>
> *K&L Gates LLP, by Susan K. Hackney, Marla T. Reschly, and Daniel D.
> McClurg, for defendant-appellees.*

BARRINGER, Justice.

In this matter, we address plaintiffs' challenges to the trial court's entry of an

order granting defendants' motion for award of attorneys' fees as part of their costs

under North Carolina Rule of Civil Procedure 41(d) pursuant to N.C.G.S. § 6-21.5 and the trial court's subsequent order awarding $599,262.00 in attorneys' fees as costs. Given the unchallenged findings of fact and unchallenged conclusions of law, we affirm the trial court's order allowing attorneys' fees as part of costs and the resulting order awarding $599,262.00 in attorneys' fees. On the record and arguments before us, the trial court did not abuse its discretion as it relates to either order.

## I. Background

As set forth in the trial court's order allowing an award of attorneys' fees, plaintiffs are limited partners of the Fayetteville Ambulatory Surgery Center Limited Partnership (FASC), which operates an ambulatory surgery center in Fayetteville, North Carolina. Plaintiffs in their individual capacities sued the general partner of FASC, defendant Cape Fear Valley Ambulatory Surgery Center, LLC (CFV), and CFV's owner, defendant Cumberland County Hospital System, Inc. (CCHS).

Specifically, the trial court found the procedural history of this matter to be as follows:[1]

> 2.     Plaintiff Michael Woodcock ("Woodcock") filed his initial Complaint against CCHS on September 26, 2019, asserting various causes of action in his individual capacity, all of which related to the ownership and operation of FASC. On October 14, 2019, Woodcock filed his first Amended Complaint, adding an additional claim, also in his individual capacity.
>
> 3.     On December 12, 2019, CCHS filed a motion to stay, forecasting that it intended to seek dismissal under

---

[1] For readability, the trial court's citations to the record have been omitted.

Rules 12(b)(1) and 12(b)(6) "because Plaintiff lack[ed] standing to assert any of the claims that he purport[ed] to bring." A week later, on December 18, 2019, CCHS filed its Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(1) or, Alternatively, Rule 12(b)(6). Featured prominently in the introduction section of CCHS's brief in support of their Motion to Dismiss, Defendants argued "Plaintiff [Woodcock] lacks standing to assert any of the claims that he purports to bring." In its reply in support of the Motion to Dismiss filed January 31, 2020, CCHS again argued that Woodcock lacked individual standing: "[t]he sole ground upon which [CCHS] moves to dismiss is that Plaintiff lacks individual standing to assert any of the claims that he purports to bring."

4.     A week later, on February 5, 2020, Woodcock moved for leave to amend the First Amended Complaint, and simultaneously filed a proposed Second Amended Complaint. The Court granted Woodcock's motion, allowed Wadon, Wahbeh, and Demitri[2] to join as plaintiffs, deemed the Second Amended Complaint filed as of that date, and denied the pending Motion to Dismiss as Moot. Through the Second Amended Complaint, Plaintiffs, in their individual capacities, asserted five claims against CCHS and/or CFV.

5.     On March 19, 2020, Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint. Among Defendants' affirmative defenses, Defendants contended that "Plaintiffs' claims were barred due to subject matter jurisdiction" and "for failure to state a claim upon which relief may be granted."

6.     On June 26, 2020, Defendants filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c). In the first two sentences of the introduction section of Defendants' brief in support of the Motion for Judgment, Defendants argued:

---

[2] This plaintiff's name is spelled "Demetri" in the case caption and elsewhere in the Record on Appeal.

> [The Second Amended Complaint] suffers from the same fatal deficiency as Woodcock's [F]irst Amended Complaint, a deficiency addressed at length in [CCHS's] prior [M]otion to [D]ismiss. Plaintiffs, all of whom are limited partners, improperly attempt to bring individual claims against Defendants.

7. Plaintiffs only responded to the Defendants' standing argument with respect to the second cause of action—breach of contract against CFV—advancing arguments completely absent from their Second Amended Complaint; notably, that Plaintiffs' [sic] were denied their voting rights under Section 14.3 of the Partnership Agreement, and that such deprivation of voting rights creates an individual right properly the subject of a direct claim. In their reply, Defendants argue, *inter alia*, that Plaintiffs did not plead facts in their complaint that Plaintiffs now argue confer standing. At the September 23, 2020 hearing on the Motion for Judgment, the Court expressed skepticism as to Plaintiffs' arguments, noting Plaintiffs' failure to include facts in the Second Amended Complaint that would support their theories, and explaining that North Carolina law requires Plaintiffs to assert their claims derivatively, not individually.

8. For the next two months, Plaintiffs served discovery and sought to depose senior CCHS executives and the corporate representative of CFV.

9. On November 24, 2020, Plaintiffs voluntarily dismissed the case, without prejudice, pursuant to Rule 41(a)(1), and forecasted their intent to re-file some or all of their claims as derivative claims on behalf of FASC.

10. On January 11, 2021, Plaintiffs' counsel sent a formal demand to CFV, demanding CFV re-assert the claims Plaintiffs previously brought in this action, plus a claim arising out of the PPP.[3] The letter indicated that:

---

[3] "PPP" stands for "Paycheck Protection Program."

[i]f the General Partner does not take these actions, then the Limited Partners will take these actions in place of the General Partner in a combination of derivative actions on behalf of FAC [sic] and actions to pursue the Limited Partner's [sic] individual rights— their voting rights—which have been wholly denied . . . .

11. On February 3, 2021, Defendants brought the Motion for Fees. Plaintiff's [sic] filed a Response to Defendants' Motion for Attorneys' Fees and Defendants filed a Reply in Support of Motion for Award of Attorneys' Fees. The Motion for Fees is now ripe for decision.

(Alterations in original and footnotes omitted).

The trial court further found and concluded:[4]

18. The Initial Complaint, First Amended Complaint, and Second Amended Complaint all brought claims against Defendants in Plaintiffs' individual capacities for what essentially amounted to breaches of Section 14.5, Section 10.1, and Article XII of the Partnership Agreement.

. . . .

21. . . . Plaintiffs did not allege derivative claims and did not allege that a pre-suit demand was made on the general partner or partnership relating to the claims they raised in this lawsuit, or any reason that would have excused such a demand. . . .

22. . . . Plaintiffs do not argue that their claims were subject to the "special duty" exception in their response to the Motion for Judgment or in their Response

---

[4] Because plaintiffs have not challenged the trial court's conclusions of law, we do not address the soundness of the trial court's legal analysis herein. We also have omitted the trial court's statement of the law and citations to court decisions to avoid any suggestion that we are affirming the trial court's summary of the law and legal analysis as it relates to standing.

Brief to the Motion for Fees. . . .

23.   Instead of a special duty owed by Defendants, Plaintiffs argue that they suffered a "separate and distinct injury" because they were denied their contractual right to vote under Section 14.3 and Section 19.1 of the Partnership Agreement. However, nowhere in the Initial Complaint, First Amended Complaint, or Second Amended Complaint is there any reference to or allegation that Defendants denied Plaintiffs' voting rights under the Partnership Agreement, nor is there any mention of Section 14.3 or 19.1 of the agreement. In other words, despite their multiple amendments and opportunities to raise claims, Plaintiffs failed to make allegations supporting their claim of separate and distinct injury. . . .

24.   The [c]ourt concludes that Plaintiffs lacked standing to bring the claims asserted in the Initial Complaint, First Amended Complaint, and Second Amended Complaint as direct, individual actions. Defendants repeatedly placed Plaintiffs on notice of the deficiency in their claims through multiple motions and briefs expressly and specifically challenging Plaintiffs' standing. . . . Instead, Plaintiffs ignored Defendants' standing arguments, and persisted litigating their non-justiciable claims despite having multiple opportunities to amend.

(Footnotes omitted).

The trial court thus granted defendants' motion for attorneys' fees as part of their costs under Rule 41(d) pursuant to N.C.G.S. § 6-21.5. The trial court also ordered defendants to file an application for attorneys' fees and costs and submit invoices for in camera review by the trial court.

Defendants subsequently filed the application and submitted the invoices for in camera review. Plaintiffs filed a response and objection to the contents of the

application. The trial court requested additional billing information, to which plaintiffs also objected. After its review of the filings and submissions, the trial court awarded $3,277.34 in costs and $599,262.00 in attorneys' fees. Plaintiffs appealed both orders but do not challenge the award of costs.

## II.    Analysis

Although attorneys' fees generally are not recoverable under the common law, our legislature has enacted provisions allowing for the recovery of attorneys' fees, including N.C.G.S. § 6-21.5. *See Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 257 (1991).

Section 6-21.5 provides that:

> In any civil action, special proceeding, or estate or trust proceeding, the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading. The filing of a general denial or the granting of any preliminary motion, such as a motion for judgment on the pleadings pursuant to G.S. 1A-1, Rule 12, a motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), a motion for a directed verdict pursuant to G.S. 1A-1, Rule 50, or a motion for summary judgment pursuant to G.S. 1A-1, Rule 56, is not in itself a sufficient reason for the court to award attorney's fees, but may be evidence to support the court's decision to make such an award. A party who advances a claim or defense supported by a good faith argument for an extension, modification, or reversal of law may not be required under this section to pay attorney's fees. The court shall make findings of fact and conclusions of law to support its award of attorney's fees under this section.

N.C.G.S. § 6-21.5 (2021).

This Court previously construed this statute in *Sunamerica Financial Corp. v. Bonham*, explaining that:

> A justiciable issue has been defined as an issue that is real and present as opposed to imagined or fanciful. In order to find complete absence of a justiciable issue it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss. However, it is also possible that a pleading which, when read alone sets forth a justiciable controversy, may, when read with a responsive pleading, no longer present a justiciable controversy.

328 N.C. at 257–58 (cleaned up). In that matter, this Court affirmed on the grounds that "the trial court's findings and conclusions suffice to support the court's order of an attorney's fee." *Id.* at 261–22. Here, we reach the same result: the unchallenged findings and conclusions suffice to support the trial court's order of attorneys' fees.[5]

Plaintiffs make several arguments: The trial court erred by allowing attorneys' fees without finding that plaintiffs voluntarily dismissed their action in bad faith; plaintiffs advanced a claim supported by a good faith argument for an extension, modification, or reversal of law; and the trial court abused its discretion by allowing attorneys' fees when the trial court previously directed plaintiffs to continue with discovery.

---

[5] Plaintiffs only challenged the finding that "this matter involved a dispute over the ownership and operation of the limited partnership." We have disregarded this finding for purposes of our review.

These arguments fail or are not preserved. First, plaintiffs rely on a decision from this Court, *Brisson v. Santoriello*, 351 N.C. 589, 597 (2000), which stated that "[t]he only limitations [on Rule 41 voluntary dismissals] are that the dismissal not be done in bad faith and that it be done prior to a trial court's ruling dismissing plaintiff's claim or otherwise ruling against plaintiff at any time prior to plaintiff resting his or her case at trial." *Id.* Yet, we are not reviewing plaintiffs' Rule 41 voluntary dismissal. Rather, we are reviewing an order allowing attorneys' fees to defendants as the prevailing party pursuant to N.C.G.S. § 6-21.5. Thus, we are not persuaded by this argument.

Second, plaintiffs only advanced before the trial court one "good faith argument for an extension, modification, or reversal of law" in opposition to defendants' motion for attorneys' fees as the prevailing party pursuant to N.C.G.S. § 6-21.5. Plaintiffs argued before the trial court and now this Court that because the Partnership Agreement of FASC was incorporated by reference in the amended complaint, "defendants could easily deduce that there was only one way not to violate Section 14.5 after the actions they had taken and that was for [CCHS] to have successfully sought to modify or amend the [Partnership] Agreement, [which] in turn could only be done by the use of Section 19.1 which required a vote of two-thirds in interest of the limited partners."

We are bound by the trial court's unchallenged determination that all claims brought against defendants were alleged breaches of Section 14.5, Section 10.1, and

Article XII of the Partnership Agreement, which plaintiffs brought in their *individual* capacities. Also unchallenged is the trial court's conclusion that plaintiffs lacked standing to bring direct, individual claims for these alleged breaches. We are further bound by the trial court's finding that plaintiffs' "good faith argument" concerns a non-pleaded breach of the Partnership Agreement. Thus, we disagree with plaintiffs' assertion that the trial court abused its discretion.[6]

Third, plaintiffs did not argue before the trial court that its actions concerning discovery precluded the court from exercising its discretion to award attorneys' fees. Hence, we do not address this unpreserved argument that is raised for the first time on appeal. N.C. R. App. P. 10(a).

Concerning the award of attorneys' fees in the amount of $599,262.00, plaintiffs also raise objections. Plaintiffs allege that the trial court improperly relied on billing records that were not provided to plaintiffs for their review, contrary to plaintiffs' due process rights under the Fourteenth Amendment. But plaintiffs did not object to the trial court's in camera consideration of these billing invoices in their response to defendants' application for attorneys' fees. "Constitutional issues not raised and passed upon [by the] trial [court] will not be considered for the first time on appeal." *State v. Lloyd*, 354 N.C. 76, 86–87 (2001) (citing *State v. Benson*, 323 N.C.

---

[6] The remaining arguments that plaintiffs make or allude to in their briefing before this Court concerning "good faith arguments" were not advanced before the trial court. Therefore, these arguments are not preserved, and we decline to address them. N.C. R. App. P. 10(a).

318, 322 (1988)). Plaintiffs did subsequently raise an objection to the trial court's request for additional billing information. However, plaintiffs' counsel was copied on both related e-mails—the message from the trial court requesting additional billing information and the response from defendants' counsel providing the additional documentation. From our review of the record, we are not persuaded that this objection has merit.

Plaintiffs additionally complain that the trial court erred and abused its discretion in the order on defendants' application for attorneys' fees and costs by not considering some of plaintiffs' arguments and by reciting the parties' contentions rather than making findings of fact. Nonetheless, after reviewing the trial court's order, we conclude that the trial court's findings and conclusions are sufficient. The order reflects that the trial court considered plaintiffs' objections to the fee application and scrutinized the time and monies expended by defendants.

## III.    Conclusion

Based on the record before us and the preserved arguments, we conclude that the trial court did not abuse its discretion by granting defendants' motion for award of attorneys' fees as part of their costs under Rule 41(d) of the North Carolina Rules of Civil Procedure pursuant to N.C.G.S. § 6-21.5 and awarding $599,262.00 in attorneys' fees as costs. Accordingly, we affirm the trial court's orders.

AFFIRMED.